Filed 2/26/25  P. v. Mesa CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B336546 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA127323) |
| v. | |
| DAVID RAY MESA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rogelio Delgado, Judge.  Affirmed.

Natalie Walters Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted appellant David Ray Mesa of willful, deliberate, and premeditated attempted murder and willful infliction of corporal injury on a dating partner. The jury also found that Mesa used a firearm in the offenses and caused his victim's paralysis. The court sentenced Mesa to 29 years to life. Mesa appealed.

On appeal, Mesa's appointed counsel filed a brief asking this court to independently review the record for error. (See *People v. Wende* (1979) 25 Cal.3d 436, 441 (*Wende*).) Mesa also filed a supplemental brief. We have considered Mesa's arguments and conducted an independent examination of the entire record. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Charged crimes

The People charged Mesa with willful, deliberate, and premeditated attempted murder of Irene L. (count 1, Pen. Code, § 187, subd. (a); 664[1]), and willful infliction of corporal injury on a dating partner, resulting in a traumatic condition for Irene (count 2, § 273.5, subd. (a).) For both counts, the People alleged that Mesa personally used a firearm in the commission of the crime (§ 12022.5, subd. (a)) and caused great bodily injury and paralysis to Irene (§ 12022.7, subd. (b)). The People further alleged that Mesa had a prior conviction for a serious or violent felony (§§ 667, subds. (b)-(j); 1170.12), a conviction for willful corporal injury on

---

[1] We refer to the victim and witnesses by first names or initials to protect their privacy. (See Cal. Rules of Court, rule 8.90(b)(4).) All undesignated section references are to the Penal Code.

an intimate partner (section 273.5, subd. (a)) within seven years of these offenses, and multiple additional prior convictions.

Mesa pled not guilty, and the case proceeded to trial in October 2023.

## B.     Evidentiary issues before trial

Before trial, the prosecutor suggested that evidence of Irene's pregnancy at the time of the shooting should be barred from trial as irrelevant.  Defense counsel said he expected to refer to Irene's pregnancy as part of the defense.  The court said it would allow the evidence because it did not want to "curtail" Mesa's defense.  Defense counsel then discussed Irene's pregnancy in opening statements.  When the prosecutor brought up the issue again before Irene testified, the court again said it would allow counsel to question Irene about it, but asked that counsel keep the questioning short.  The prosecutor noted that some of the evidence involved Irene saying she would take the "morning after pill," which is "related to abortion and that is a highly politicized issue."  The court said again that it would allow the evidence.

Mesa was on parole at the time of the offenses.  Defense counsel argued that if the jury became aware of this Mesa might not get a fair trial, so introduction of such evidence would violate his due process and equal protection rights.  The prosecutor noted that Mesa's parole agent saw Mesa in his car that morning—the same car Mesa was in at the time of the shooting.  The prosecutor said he did not want to introduce that Mesa was on parole, but that a witness seeing him in the car was relevant: "So we have a video that shows the defendant's car and shows, essentially, the shooting.  We have the defendant's car found down the street from his house.  Subject to a search warrant a couple days later,

3

the defendant's parole records were found showing ownership, possession of that car. But also on the morning of the actual shooting, the defendant had a meeting with the parole agent who saw him in this car." The court said it would sanitize the information provided to the jury by referring to the parole agent as "a law enforcement agent." The court warned the parties to be cautious in the way they asked the parole agent questions, lest they open the door to information about Mesa's parole. The parties said they understood. Later, parole agent Rick Audet was introduced as "a peace officer" for the State of California, and was referred to by counsel as "Agent Audet."

The prosecution proposed to introduce the parole documents found in Mesa's car. Almost all information on the documents was redacted, with the exception of Mesa's name and the condition that Mesa stay away from Irene. The court agreed to introduce the documents as redacted over defense counsel's objection.

## C.    Prosecution case

Irene testified that she met Mesa in early 2021. Around April 11, 2021, Irene was staying with Mesa at a hotel in Monrovia. Their relationship had become rocky and they argued daily. Irene testified that she left the hotel late at night on April 11 or in the early morning hours on April 12 because she did not feel safe with Mesa. Irene said she texted her friend Jessica to come and pick her up from the hotel because "[i]f I wanted to go on my own will, he would not let me leave." As Irene was walking out of the hotel room while holding her belongings, Mesa grabbed Irene's phone out of her pocket. Irene asked for it back, but Mesa said "no," and closed the room door. Irene left without trying to get the phone back because she was "anxious to get out

4

of there" and she thought she could buy a new phone. Irene checked into a hotel in Azusa in the early hours of April 12.

Later on April 12, Irene bought a new phone. Irene wanted to get back the phone that Mesa had taken because it contained pictures and videos of her recently deceased son. So Irene started texting Mesa from the new phone asking for her phone back, and offering to return a phone belonging to Mesa's mother, which Irene had with her. Irene testified that she continued texting Mesa and his mother trying to arrange an exchange of phones. Meanwhile, Mesa was using Irene's phone to post to Facebook and to text Irene and others, telling people that Irene was pregnant.

At some point, when Irene was frustrated that Mesa was not returning her phone, Irene texted Mesa that she would get a "big homie" or that she would show up with "home boys" to help her get her phone back. Irene said she was "very angry" because Mesa had taken her phone before, and she was "tired of it." On cross-examination, Irene admitted that these were threats, but not death threats.

On April 13, Mesa agreed to meet Irene at her hotel. Irene testified that she waited in the lounge, and when Mesa texted that he was there, she went outside. A video was played showing Irene walking outside and approaching the passenger side of a black car, which Irene identified as Mesa's. Irene testified that Mesa wanted Irene to get into the car, and she said no. He gave Irene her phone. The video showed Irene turn and begin to walk away.

Mesa turned the car around and called Irene's name. She was annoyed because she thought he left. Irene testified that

5

Mesa said to her, "If I can't have you, nobody can have you."  She saw a bright light, heard a boom, and hit the ground.

Irene testified that her entire body hurt and she felt like she was choking.  People came to help her, and she gave them contact information for her mother and daughter.  She was scared and in pain.

Witness A.R. testified that as she was going through a McDonald's drive-through next to the hotel, she saw a black car stopped in the parking lot.  A woman was standing next to the car, and based on her body language and facial expression, she appeared to be arguing with a person in the car.  A.R. drove around the black car toward the street.  She then heard gunshots and the black car sped away; the black car was "going very quick" and "trying to get in front of me to the intersection."  A.R. identified her own car and the other car in a video.  A.R. made a U-turn at a nearby intersection and returned to the scene.

A.R. testified that Irene was lying on the ground, talking to another woman, and the woman's husband was on the phone with 911.  Irene initially was "speaking a lot and she seemed frantic," but as they waited for the ambulance, Irene began to lose consciousness.  A.R. testified that Irene was "repeating the name 'David.' It was her ex-boyfriend."  Irene asked A.R. to call her daughter and mother.  After police arrived, they asked Irene who shot her, and asked for access to her phone, which she gave them.  Irene told them that Mesa shot her, giving his name and birthdate. Audio recordings of Irene's conversations with the police were played for the jury.

Dr. Hugh Chung, a trauma surgeon and critical care specialist at Pomona Hospital Medical Center, testified that when Irene arrived at the hospital by ambulance she had a single

gunshot wound to the lower part of her neck near her shoulder. Her condition was "stable," meaning that death was not imminent. An initial examination revealed that Irene did not have any sensation from her torso to her feet and her ability to move her arms was limited, suggesting a spinal cord injury. A CT scan showed injury to the spine at the level of T-1, the first thoracic bone. A bullet was in Irene's neck, and because surgical removal would be risky, it was left in place.

Irene testified that she now lives at a nursing facility. She cannot feel anything from the chest down, and she cannot sit in a wheelchair without falling over. She cannot do anything for herself, including feed herself, and she has to wear diapers. She has nerve pain in her hands and arms, and she cannot close her hands.

On cross-examination, defense counsel asked Irene about other cars and people visible in the video of the shooting. Irene did not recognize any of them.

Rick Audet was introduced as a peace officer. He testified that as part of his work, he met with Mesa twice a month, including sometimes at Mesa's home. He testified that he met with Mesa on April 13, 2021 in front of Audet's office building; Mesa was standing by a black BMW. Audet spoke with Mesa about the car, because it was different car than Audet had seen him in before. There was a document that included "conditions" that Mesa agreed to abide by, and Mesa signed the document. One of those conditions was not to contact Irene or her family.

After the shooting, police located Mesa's car near his home and it was impounded. Steven Rodriguez, an evidence technician for Azusa Police Department, testified that he photographed and searched the impounded BMW. He searched the car for firearms,

7

ammunition, magazines, and casings, but found none. Rodriguez also took DNA swabs from the steering wheel and gear shifter, but did not swab for gunshot residue. Rodriguez testified that he found documents in the glove compartment with Mesa's name on them; the jury was shown the redacted version of the documents, which were the ones Audet discussed. On cross-examination, Rodriguez testified that he did not notice any stippling or gunpowder in the vehicle, but on redirect, he stated that those are not things he would normally see with the naked eye.

During a search of Mesa's residence after the shooting, officers found a gun cleaning kit. They did not find a firearm, ammunition, or shell casings.

## D.     Defense case

Mesa did not testify, and the defense did not present any additional evidence.

## E.     Jury instructions

Defense counsel questioned the use of an instruction regarding expert witnesses, since the only potential expert was Irene's treating physician, who was not designated as an expert.[2] The court overruled the defense's objection and included the instruction. The court instructed the jury and the parties presented their closing arguments.

## F.     Verdict and sentence

During deliberations, the jury asked to watch some of the prosecution's video evidence again, and asked for a read-back of the testimony of Dr. Chung and Mr. Rodriguez. The jury found Mesa guilty on both counts. On count 1, the jury found Mesa

---

[2]     The court and parties did not specify which instruction they were discussing. Presumably, they meant CALCRIM no. 332, which was later given to the jury.

guilty of willful, deliberate, and premeditated attempted first degree murder. (§§ 187, subd. (a), 664.) On count 2, the jury found Mesa guilty of willful infliction of injury on a girlfriend. (§ 273.5, subd. (a).) On both counts, the jury found that Mesa personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)) and caused Irene to suffer paralysis (§ 12022.7, subd. (b)). Mesa waived his right to a trial regarding his prior strike and aggravating factors, and admitted his previous convictions.

At the sentencing hearing, defense counsel argued that Irene's threats to Mesa made her "an initiator or participant," which was a mitigating factor. Defense counsel also mentioned that Mesa "is Hispanic Mexican heritage and there is a racial impact on this sentence" because the "enhancements are based on prior convictions," so he asked the court to exercise its discretion to strike or dismiss the sentence enhancement under section 12022.5, and give Mesa a sentence of 19 years to life.

The court observed that the record showed that Mesa had 26 prior convictions; the facts of this case were "very cruel, callous, violent"; and the "results are terrible" because Irene was permanently paralyzed. The court sentenced Mesa on count 1 to 7 years to life, doubled to 14 years due to the prior strike; plus a high term of 10 years on the firearm enhancement under section 12022.5 based on the court's review of factors in mitigation and aggravation (Cal. Rules of Court, rule 4.421); plus 5 years on the great bodily injury enhancement under section 12022.7, for a total of 29 years to life. The court sentenced Mesa on count 2 to the high term of 5 years, doubled to 10 years due to the prior strike, plus 10 years for the firearm enhancement under section 12022.5, plus 5 years for the great bodily injury enhancement

under section 12022.7, for a total of 25 years.  The sentence on count 2 was to run concurrently with the sentence in count 1.  The court imposed various fines and fees, and calculated Mesa's presentence credits.  The court advised Mesa of his appellate rights.  Mesa timely filed a notice of appeal.

## DISCUSSION

On appeal, Mesa's appointed counsel filed a brief requesting that we independently review the record for error.  (*Wende, supra,* 25 Cal.3d at p. 441.)  We directed counsel to send the record and a copy of the brief to Mesa, and notified Mesa of his right to respond within 30 days.

Mesa submitted a single-page supplemental brief asserting that there was a "lack of evidence" supporting the conviction, and that Irene was "under the influence of Meth" but no toxicology or blood tests were done.  He requested a reduced sentence.

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'"  (*People v. Morales* (2020) 10 Cal.5th 76, 88 (*Morales*).)  "Our review must 'presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.'"  (*People v. Gomez* (2018) 6 Cal.5th 243, 278.)  We do not "resolve credibility issues or evidentiary conflicts"; rather, the "relevant inquiry is whether, in light of all the evidence, a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt."  (*Ibid*.)

10

Here, substantial evidence supports the convictions on both counts. Irene testified that she and Mesa had been in a dating relationship, they were arguing by text, and Mesa said, "If I can't have you, nobody can have you" before he shot her in the neck. A.R. testified that she saw a black car similar to Mesa's car near Irene shortly before she was shot. The jury was shown video of the incident, photos of Mesa's car, text messages between Mesa and Irene, and documents from inside the car bearing Mesa's name. The jury also heard testimony that Mesa was driving the same car earlier in the day when he met with Audet. There was no evidence suggesting that the shooter was anyone else, and Mesa offered no alibi or other defense.

"Attempted murder requires (1) a specific intent to kill and (2) a direct but ineffectual act toward accomplishing the intended killing." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 605.) Here, the evidence showed that Mesa shot Irene, and his stated purpose in doing so was to make it so "no one can have" her. Based on this evidence, a reasonable factfinder could conclude on count 1 that Mesa had a specific intent to kill Irene. The shooting was a direct but ineffectual act.

Furthermore, the evidence supports they jury's finding that the attempted murder was willful, deliberate, and premeditated. Mesa brought a gun and ammunition with him when he arranged to meet Irene. He began to drive away from her but he turned around and came back, called her name, and said "If I can't have you, no one can have you" before he shot her. Based on this evidence, a reasonable factfinder could find that the attempted murder was willful, deliberate, and premeditated. (See, e.g., *Morales, supra*, 10 Cal.5th at p. 89 [premeditation may be shown by evidence of planning activity, motive, or the manner of

11

killing].)  The same evidence supports the jury's finding on count 2 that Mesa "willfully" inflicted injury on Irene.

The evidence also supports the jury's finding that Mesa used a firearm during the offenses.  (§ 12022.5, subd. (a) [authorizing a sentence enhancement for "any person who personally uses a firearm in the commission of a felony or attempted felony"].)  In addition, Dr. Chung and Irene both testified that Irene was permanently paralyzed as a result of the shooting, supporting the jury's great bodily injury findings. (§ 12022.7, subd. (b) [authorizing a sentence enhancement for "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony which causes the victim . . . to suffer paralysis of a permanent nature"].)  In short, the jury's verdict on count 1, count 2, and the enhancement findings are supported by substantial evidence.

Mesa's contention that Irene was under the influence of methamphetamines is not relevant to the verdicts.  Attempted murder and willful infliction of corporal injury are criminal acts regardless of the victim's state of sobriety.

We have examined the entire record and are satisfied no arguable issues exist in the appeal before us.  (*Smith v. Robbins* (2000) 528 U.S. 259, 278; *People v. Kelly* (2006) 40 Cal.4th 106, 110; *Wende*, *supra*, 25 Cal.3d at p. 443.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.

We concur:


MORI, J.


ZUKIN, J.